UNITED STATES *v.* FRED. GRETSCH MFG. CO., INC. (No. 4156)[1]

[1] C. A. D. 26.

United States Court of Customs and Patent Appeals, December 19, 1938

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.
*Siegel & Mandell* for appellee.

[Oral argument October 10, 1938, by Mr. Weeks and Mr. Mandell]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellee at the port of New York in entry 720755 entered "one case Musical Inst (strings)" and "one case Toys" and in entry 718285 entered "one case Ukulele Strings Musical Instruments," two cases of "Unmfg Wood, Musical Instruments Violins, Musical Instruments Parts," and "one case Musical Inst Flutes."

The collector classified the merchandise in accordance with the advisory classification of the appraiser. The goods entered as toys and flutes were classified as toys and assessed for duty at 70 per centum ad valorem under paragraph 1513, Tariff Act of 1930. The merchandise entered as "one case Musical Inst (strings)" in entry 720755, and that entered as "one case Ukulele Strings Musical Instruments," and the two cases of "Unmfg Wood, Musical Instru-

ments Violins, Musical Instruments Parts," were not classified as toys and were assessed with rates of duty other than those applying to toys.

The importer filed a timely protest against the collector's said classification and assessment with duty covering both entries, the material portion of which protest follows:

*Protest No. 719492-G/13912*

NEW YORK, *March 29, 1934.*

COLLECTOR OF CUSTOMS,
    *Port of New York, N. Y.*

SIR: Protest is hereby made against your decision assessing duty at 70% under par. 1513, *on musical instruments and similar merchandise covered by the entries named below.* The reasons for objection under the Tariff Act of 1930, are that said *merchandise is dutiable according to component material of chief value* at the following rates of duty: 40% under par. 1541 (musical instruments), or at 45% under par. 397 (metal articles), or at 40% under par. 923, or at 50% under par. 1120, or at 33⅓% under par. 412, or at 25% under par. 1537, or at 35% under par. 1413 or at 25% under par. 1403, or at 30% under par. 1502, or at 60% under par. 1503, or at 60% under par. 1518, or at 40% under par. 1021, or at 35% under par. 205, or at 60% under par. 31, or at 60% under par. 205, or at 55% under par. 385, or at 40% under par. 214, or at 50% under par. 230, or at 30% under par. 1403. [Italics ours.]

| Entry No. | Date of entry | Liquidated | Vessel |
|---|---|---|---|
| 718285 | 8/18/33 | 3/2/34 | Hamburg. |
| 720755 | 8/25/33 | 2/24/34 | Deutschland. |

At the trial before the First Division of the United States Customs Court, counsel for the Government moved that the protest be overruled on the ground that it was "multifarious," stating that a similar issue had been decided by the court in T. D. 41769, and that the question there involved "multifariousness of the number of claims in the protest," whereupon counsel for the importer formally abandoned all claims with reference to entry 720755 (which contained the "Musical Inst (strings)" and "one case Toys" and stated that importer confined its claim to the merchandise assessed at 70 per centum ad valorem covered by entry 718285. Particular attention was called to one of the classes of merchandise contained in that entry, to wit, flutes, which counsel referred to as "fifes" or "flageolets."

The trial court took the Government's motion under advisement, and in its decision denied the same, decided the case upon the merits, holding, by a majority of the court, one member dissenting, that the imported merchandise (flutes) was musical instruments, and sustained appellee's protest insofar as it covered these articles. From the judg-

ment of the trial court, the Government has appealed to this court and assigns as error, among others, the denial of its motion above referred to.

In section 514 of said tariff act under the heading "Protest against collector's decisions" is a provision relating to the character of protest which an importer is authorized to file in cases like that at bar, which provision reads as follows:

\* \* \* file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. \* \* \*

It will be observed that the protest complains of the collector's decision in assessing duty at *70 per centum under paragraph 1513, on musical instruments and similar merchandise* covered by the two entries. The only merchandise assessed with duty at 70 per centum in the two entries was one case of toys in entry 720755 and one case of musical instruments, flutes, in entry 718285. It is pointed out that the appraiser stated in his "Answer to Protest" (which does not appear to be timely) that the "merchandise in question consists of toy flutes, miniature animals, etc., composed of various materials, excepting products provided for in paragraph 31 [celluloid], and chiefly used for the amusement of children." No exhibit representing the goods invoiced as "one case Toys" is before us and we have no knowledge as to their component material except as is suggested by the above-quoted statement of the appraiser and the names of the articles in the invoice.

We have before us, therefore, a protest directed against the collector's assessment with relation to "musical instruments and similar merchandise," covered by the two entries, which merchandise had been assessed at 70 per centum ad valorem duty. Whether the protestant intended to say that the toys were similar to musical instruments is doubtful. From an examination of the invoice relating to the items entered as toys, it does not appear that any of them bear any similarity to a musical instrument, unless it would be the item listed as "Sing. birds." The other items named in the invoice are miniature animals. The other items in the two entries such as strings, musical instrument parts, and violins, might have been characterized as "similar merchandise," but these were not classified as toys and were not assessed at 70 per centum ad valorem.

The claims in the protest at bar may be properly analyzed in the following manner:

\* \* \* that said merchandise is dutiable according to *component material of chief value* at the following rates of duty [italics ours]:

| Claim No. | Rate claimed | Paragraph | Paragraph provides for— |
|---|---|---|---|
| | *Percent* | | |
| 1 | 40 | 1541 | Musical instruments. |
| 2 | 45 | 397 | Mfrs. of metal. |
| 3 | 40 | 923 | "    " cotton |
| 4 | 50 | 1120 | "    " wool. |
| 5 | 33⅓ | 412 | "    " wood. |
| 6 | 25 | 1537 | "    " bone, chip, etc. |
| 7 | 35 | 1413 | "    " paper. |
| 8 | 25 | 1403 | "    ." papier mâché. |
| 9 | 30 | 1502 | Balls, boxing gloves, etc. |
| 10 | 60 | 1503 | Artls. composed of beads, etc. |
| 11 | 60 | 1518 | Artificial flowers, etc. |
| 12 | 40 | 1021 | Floor coverings. |
| 13 | 35 | 205 | Mfrs. of plaster of Paris. |
| 14 | 60 | 31 | "    " celluloid. |
| 15 | 60 | 205 | Plaster of Paris statues, etc. |
| 16 | 55 | 385 | Woven fabrics in chief value of tinsel, etc. |
| 17 | 40 | 214 | Mfrs. of earthy or mineral substances. |
| 18 | 50 | 230 | "    " glass. |
| 19 | 30 | 1403 | "    " pulp |

It is to be noted that there is no claim here that the imported merchandise consists of musical instruments, but it is claimed that it is in chief value of musical instruments. All the other claims are similarly limited.

The merchandise called "flutes" consists of tapered metal tubular flute-like whistles each containing six finger holes. The instrument is played by blowing through a small aperture at the large end. The official exhibits average about one foot in length and the greatest diameter is about three-quarters of an inch. It is obvious from the appearance of the articles that each article contains no material except painted metal, apparently tin, and a very small block of wood which is so arranged at the large end of the flute as to form the opening into which the breath is blown to make sound.

Assuming that the protest was intended to be directed against the collector's action in connection with the items entered as toys and the items entered as flutes, it is then to be observed that the protestant claims that all these articles are "in chief value of musical instruments" and are also in chief value of metal and in chief value of wood, etc. If we construe the term "in chief value of musical instruments" to mean that the protestant was claiming that the goods were musical instruments, then the claim that they were musical instruments would apply to the toy miniature animals as well as the flutes. All the other claims relating to component material of chief value would also apply to flutes. It is apparent that all the claims, except the three referred to above, under no circumstances could have any possible relation to the flutes. There is nothing about

them in the nature of cotton, wool, bone, chip, paper, papier mâché, balls, boxing gloves, beads, artificial flowers, floor coverings, manufactures of plaster of paris, manufactures of celluloid, plaster of paris statues, tinsel fabrics, mineral substances, glass, or pulp.

There were three opinions written in the case below. Judge Sullivan cited certain authorities and without discussing the question stated that the motion was denied. Judge Brown agreed with Judge Sullivan on his findings as to the motion and on the merits of the case and in a separate opinion emphasized his views on the question of "multifariousness." He stated in substance that it was an equity doctrine which had "very spare, if any, application to alternative claims" in protests. He also stated that the doctrine was a "strictly modern idea" which he believed to be unsound when applied to a protest of the character in controversy. It was his view that the importer—

should be permitted to claim many paragraphs alternatively where the composition or chief value might by possibility place his merchandise if held not to be a toy.

Presiding Judge McClelland, relying upon certain authorities, some of which will be discussed *infra*, took the position that the claims—

are inconsistent with and repugnant to each other to the point where uncertainty is the result, and many of the claims may be said to be sham.

and that the protest did not comply with the mandatory provisions of the statute which we have quoted above. Chief reliance was made upon the decision of this court in *Lichtenstein* v. *United States*, 1 Ct. Cust. Appls. 79, T. D. 31105.

The doctrine which relates to a pleading being multifarious is applied in equity cases and is in many respects analogous to certain rules of pleading in the common law. Keigwin in "Cases in Equity Pleading," page 198, has the following to say concerning the doctrine, quoting from Story, Equity Pleading §271:

By multifariousness in a bill is meant the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters, perfectly distinct and unconnected, against one defendant, or the demand of two matters of a distinct and independent nature against several defendants in the same bill.

The term was often used by the Circuit Courts and the Circuit Courts of Appeal with respect to the character of protests filed against the action of collectors in classifying and assessing duty against imported merchandise. The proceedings before those courts when this term was used involved an application of a statute identical with that at bar except that by the terms of Revised Statutes 2931 then in force, the protestant was required to assign his "grounds" while in the Tariff Act of 1930 and several prior acts the word "reasons" was

used instead of "grounds." This court held both words had the same meaning. *Carter* v. *United States*, 1 Ct. Cust. Appls. 64, T. D. 31033.

From the foregoing it is to be observed that the motion to overrule the protest by the Government was based upon the ground of "multifariousness" and that that term does not properly apply to the defects of the protest at bar which will be pointed out and discussed at some length later herein. It would seem, therefore, that the motion to overrule the protest did not point out the correct reason why the protest was bad.

In our view, the mere fact that the motion did not point out the fatal defects in the protest makes no difference in our conclusion since if the protest was bad for failing to comply with the statute it was the duty of the court to dismiss it *sua sponte*. *U. Fujita & Co. et al.* v. *United States*, 26 C. C. P. A. (Customs) 63, T. D. 49611. The motion at least served the purpose of calling the form of the protest to the attention of the trial court and it was the court's duty, regardless of a motion, to dismiss the protest if it did not, when filed, meet the requirements of the statute.

In *Legg* v. *Hedden*, 37 Fed. 861, cited by appellee, a protest which claimed certain merchandise to be dutiable under four different paragraphs, which had some relevancy to the imported merchandise there involved, was under consideration. The Government had moved to dismiss the protest on the ground of multifariousness. The Board of General Appraisers (now the United States Customs Court) held that it was not subject to this objection and that importer had the right to make alternative claims even though they were in conflict and inconsistent with each other. This was under the tariff act of March 3, 1883. The Circuit Court for the Southern District of New York, in an opinion by Judge Lacombe, the jurisdiction being stated in the opinion to be "at law," discussed the contention of the Government that the protest was multifarious, and, after stating that one had the right to make alternative claims even though they were inconsistent, stated:

* * * Under those circumstances, to stamp the protest as void because it is multifarious, would seem to be legislation, rather than a construction of the statute.

In deciding the *Legg* v. *Hedden* case, *supra*, Judge Lacombe pointed out the difficulties which would undoubtedly surround the entire subject of making multiple claims. He did not have occasion, however, to consider the sufficiency of a protest which not only had a multiplicity of conflicting claims (and most alternative claims may be said to be conflicting in one sense) but at the same time contained other claims so incongruous and astoundingly inapplicable to the merchandise as are many of the claims in the protest at bar.

The courts have frequently said that the protest provisions of the various tariff acts, being intended for the use of business men as well as lawyers, did not require technical precision, and that as long as it appeared from the protest, distinctly and specifically, what the importer complained of and what he claimed, and if it further appeared that the importer at the time of filing the protest had in mind the contention subsequently made at the trial, the protest should be held to be valid. (The last requirement was stated prior to the enactment of the protest amendment provision now in force.) It was emphasized that there was no provision for amendment of the protest in the various tariff acts and that it would be a hardship not to let the importer have as many opportunities as he desired to get his merchandise classified at a lower rate elsewhere in the act than where the collector had placed it. *Malhame & Co.* v. *United States,* 8 Ct. Cust. Appls. 324, T. D. 37597. Unquestionably the later rulings of the courts have not liberalized these early rulings as to the requisites of a protest.

No case has been cited and we have found none where the facts are exactly on all fours with those at bar. The principles laid down in some of the cases, we think, are decisive of the issues presented here. We said in *Lichtenstein* v. *United States, supra:*

In the several importations in which these protests were used there were included not all the classes of goods enumerated, each importation including but one or two classes of goods, with the result that the main and alternative grounds named in the protest were incongruous. Sections of the statute in no way affecting the importation in question were enumerated, and the burden was imposed upon the collector of picking out in each case which of the goods enumerated in the protest were actually contained in the importation. But more than this, as the protest contained a large number of claims that were pertinent only to some other classes of goods, involving some other importation, it imposed the burden upon the collector of going through the entire claim in the list to ascertain what was in the mind of the protestant in filing his protest, and by a process of exclusion of undertaking to ascertain the real claim put forth. This is far from being specific. As was said by the board:

It does not seem that there is such a correlation between horsehair braids and hats and curled hair for mattresses, chemical compounds, sheets of collodion, straw or flax straw dutiable by the ton, sawed planks of cabinet wood, manufactures of fur, gelatin, ivory, shell, etc., and indurated fiber ware or manufactures of wood pulp as to require any judicial construction in the matter.

It is not essential that the importer shall in the protest "hit the bird in the eye." But it is essential that he shall state his claim with such reasonable clearness and certainty as to acquaint the collector with the real ground of his complaint. This protest is misleading rather than informing. This obscurity results from a pernicious method of attempting to throw upon the collector and the courts the burden which properly rests upon the protestant of fairly apprising the collector and the court of *real* claims as distinguished from possible claims, which might be appropriately made with reference to goods not involved in the importation in question.

The above language was used in relation to a protest which contained a recital of several kinds of goods in the importations involved,

as well as goods not contained in those importations, and claims were made under many different paragraphs of the tariff act. While the collector might have found goods in the importation to which most of the claims might have been more or less pertinent, it was styled a "blanket" protest and the court stated that it threw upon the collector work which the importer or those representing him should have done. It will be observed that in the *Lichtenstein* case the protest resembled the protest at bar in many particulars and in other particulars it was somewhat different. There, as here, when the protest was filed it was directed against several different kinds of goods and there, as here, it was not pointed out into which claimed paragraph the particular entered items should fall. In the instant case, however, there are many more claims than were in that case which are unrelated to and wholly incongruous with a part of the merchandise. The court there concluded that the claims were incongruous and that the protestant had not distinctly and specifically disclosed his *real* claims, but had imposed a burden upon the collector not contemplated by the statute, and held the protest bad.

In *Malhame & Co.* v. *United States, supra,* a very large number of claimed paragraphs were recited in the protest. The court, in an opinion by Judge Barber, held the protest bad and after quoting some of the above-quoted language from the *Lichtenstein* case, said:

And we think that language fairly applicable to the protests here.

There is another view of this protest which makes even more strongly against the importers. It will be noted that therein, after claiming the merchandise to be dutiable according to the component materials of chief value, the protest contains the words, "or otherwise." Just what force is to be given to the quoted expression the importers' counsel does not undertake to state. Grammatically it seems to indicate that the merchandise was claimed to be dutiable either as to component materials of chief value or under the other provisions, generally eo nomine, of each and all the various paragraphs thereinafter mentioned. If it be given this interpretation, the Government claims and the importers do not deny, that the total number of different classifications made by the claims in the protest would be more than 143. Such a diversity of claims, in view of what the merchandise in fact is, only serves to render obscure, rather than to clarify the issue and makes the entire protest quite the opposite of what the statute contemplates.

In *United States* v. *Willenborg & Co.*, 9 Ct. Cust. Appls. 187, T. D. 38013, this court again passed on the question of the multifarious character of a protest and held the same not to be subject to the objection that it was multifarious or that it did not specifically and distinctly set forth the importer's claims and objections to the action of the collector. The importation involved metal thread goods and beaded articles. The protest claims were divided so as to make certain of them apply to the metal thread articles and others to the beaded articles. In holding the protest valid the court pointed out that:

The paragraphs of the tariff act claimed to be applicable to the beaded articles and the paragraphs claimed to be applicable to the metal-thread goods are sepa-

rately stated, and the collector was left in no doubt as to the provisions upon which the importers relied as to each class of merchandise. In other words, while many alternative claims were made as to both kinds of goods, the collector was not embarrassed by a blanket protest covering different kinds of merchandise and presenting a multitude of claims the pertinency of which to some of the goods or all of them or none of them could be determined only after time-consuming investigations and probably a reexamination of every article involved.

Possibly some of the paragraphs specified in the protests are more remotely related to the goods than others; nevertheless, it can not be safely said that they have no relation whatever to the merchandise or that the merchandise could not be classified under any one of them if the others were out of the way.

Upon the importer rests the duty of showing not only that the collector is wrong, but that he, the importer, is right, and that he made the right claim in his protest. At the same time, he may not be fully informed as to all of the materials of which his merchandise is made up, or, if aware of its composition, he may not be certain of the component of chief value, and consequently he is not in a position to pick out of the tariff act a single paragraph and safely depend upon his selection as correct. Because of the difficulty of selecting the right paragraph and because more often than otherwise the right paragraph can only be determined after a judicial inquiry, *the courts have permitted the making of alternative claims, coupled with the limitation that the claim must have some relation to the goods and be sufficiently specific to inform the collector of the nature of the claim and the goods affected by it.* [Italics ours.]

We think that the rules laid down in the last three above-cited cases point to the correct decision of the issue presented here. It is well-settled law that a protestant has the right to claim alternatively that his goods are dutiable under different paragraphs of the tariff act and it clearly is his right, for reasons above quoted, to claim that his goods are dutiable under a number of different paragraphs at the rate applicable to the component material of chief value when the merchandise is composed of different kinds of material. This court, however, has always required that the claims must have some relation to the merchandise and that the claim be identified with the particular merchandise in the entry if more than one kind of goods were contained in the entry.

Now, measured by the above-stated rules, does appellant's protest comply with the mandate of the statute? We think not. By interpretation of the protest and by investigation of the merchandise, the collector might be advised, after deciding what was "similar merchandise covered by the entries," that the importer claimed some of the articles to be musical instruments, but there was nothing in the protest to indicate which of the imported articles protestant had in mind. There was nothing to indicate which of the articles were claimed to be in chief value of wood, or of bone, or of chip, or of floor coverings, or of any of the other materials or articles mentioned in any of the other eighteen claims of the protest.

The case was argued in this court by both sides as if the protest was directed solely to the so-called flutes. This, no doubt, was the

result of the position appellee took at the trial. But, the issue is not to be presented in this manner. It was the duty of the court to determine whether or not there had been a compliance with the statute when the protest was filed. Was the protest, when filed, sufficiently specific and distinct in the respects required by the statute to enable the collector to perform his duties in the manner contemplated by law? It is not argued here, and cannot be argued logically, that under circumstances like those at bar an invalid pleading can be rendered valid by the protestant abandoning a portion of it and explaining to the court what his claims are and what they are claimed to be against.

We think that the rules laid down in the above-cited and quoted authorities require a holding here that the protest when filed was not sufficiently distinct and specific to comply with the statute. Among its several features which lack distinctness and specificity it seems to us that the outstanding faults rest in (1) the failure to point out which of the goods in the importation should have been classified under the various claimed paragraphs, and (2) in the undue and unwarranted multiplicity of claimed provisions. In addition to what we have already said with reference to the right of a protestant to claim alternatively, we think it proper to add that there certainly is some limit past which he cannot go in making a multiplicity of claims. While an irrelevant claim, inadvertently made, might not of itself invalidate a protest, surely it cannot be urged that a protestant has a right to claim that his goods are dutiable in all the other paragraphs of the tariff act except those under which the collector classified them. Obviously, such a pleading would not be a compliance with the law. A pertinent inquiry might be made as to where the line is to be drawn. On this phase of the case it is sufficient to say that we are of the opinion that no hard and fast rule can be made. Each statement of facts should rest on its own bottom. If the multiplicity of claims hides the *real* claims in such a way that it has not been made clear to the collector what is in the mind of the protestant, there has been no compliance with the requirement of the law.

The trial court, for the reasons herein set out, should have *dismissed* the protest and its judgment is *reversed* and the cause *remanded* for further proceedings not inconsistent with the views herein expressed.